# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

PATRICK GAVIN,                          §
                                        §
              *Plaintiff,*               §
                                        §    Civil Action No. 4:24-cv-154
v.                                      §    Judge Mazzant
                                        §
ERKUR MAKINE,                           §
                                        §
              *Defendant.*               §

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(5) for Improper Service and 12(b)(2) for Lack of Personal Jurisdiction (Dkt. #7). Having considered the Motion, the relevant pleadings, and the applicable law, the Court finds that the Motion should be **GRANTED in part**.

## BACKGROUND

This is a personal injury case. Plaintiff Patrick Gavin has sued Defendant Erkur Makine, a Turkish company, on various tort theories because Defendant's machine allegedly severed Plaintiff's hand from his arm (Dkt. #6). The current dispute concerns two procedural questions. First, whether the Court should dismiss this action for lack of personal jurisdiction over Defendant under Rule 12(b)(2). Second, whether the Court should dismiss this action for improper service under Rule 12(b)(5). The Court begins with a factual synopsis before summarizing the procedural history of the case. Then, the Court turns to the jurisdictional question before it. As the Court will explain, it may not exercise personal jurisdiction over Defendant because Defendant lacks sufficient minimum contacts with Texas. Thus, the Court need not address whether service was proper. Defendant's Motion should be granted under Rule 12(b)(2).

I.    **Factual Background**

This case involves a catastrophic injury. Namely, the loss of an appendage. Three actors are involved. The first is Plaintiff, Patrick Gavin. Plaintiff is a Texas citizen who worked at D6 Incorporated ("D6")—a Texas plastic manufacturing company and the second party of note (Dkt. #6 at pp. 1, 3). The third actor, Erkur Makine, is a Turkish company that manufactures "Thermoforming Machines" (Dkt. #6 at p. 1).[1] A Thermoforming Machine is a large piece of equipment used to make various plastic goods—here, "plastic containers for pre-packaged food items" of the sort used at "grab and go" locations throughout Texas (Dkt. #6 at pp. 3–4).

According to Plaintiff's First Amended Complaint (the "Complaint"), on a February evening in 2023, Plaintiff was working on a Thermoforming Machine as an employee of D6 (Dkt. #6 at p. 3). The machine in question is known as the "ER90-4 Thermoforming Machine" ("ER90-4" or the "Machine") (Dkt. #6 at p. 3). Plaintiff classifies it as "a metallic forming/stamping/cutting press type machine" used in an assembly line process (Dkt. #6 at p. 4). "The assembly line unrolls a thin clear plastic liner which is then sent through the ER90-4 to be 'formed[,]'" after which the plastic is "cut into sections using a heating press" (Dkt. #6 at p. 4). While Plaintiff was operating the Machine, it "failed to clear off the plastic remnant between cuts," leaving a "plastic 'remnant' in the line, which shut the line down until it was manually removed" (Dkt. #6 at p. 3). In response, Plaintiff "stuck his hand inside the machinery in order to clear the line" so that the machine could resume normal function (Dkt. #6 at p. 3). Then, "the thermal press used to cut the plastic came down on [Plaintiff's] left hand, completely severing it at the wrist"

---

[1]  Defendant notes, and Plaintiff does not dispute, that its proper name is Erkur Makine Imalat Plastik Ic ve Dis Ticaret Ltd. Sti. (Dkt. #7-1 at p. 1).

(Dkt. #6 at p. 3). Plaintiff claims that the Machine suffers from several flaws, including inadequate warnings and defective design (Dkt. #6 at pp. 3–10). For his injuries, Plaintiff seeks redress pursuant to nine causes of action, each of which claim an entitlement to relief based upon various theories of strict products liability, negligence, and breach of warranty (Dkt. #6 at pp. 5–19).

With the acute facts of the case set forth above, a few underlying jurisdictional facts are of note. Plaintiff is an individual domiciled in the state of Texas (Dkt. #6 at p. 1). Defendant is a Turkish company organized under Turkish law that operates a principal place of business in Istanbul, Turkey (Dkt. #6 at p. 1). According to Plaintiff, Defendant designed, manufactured, and distributed the ER90-4 (Dkt. #6 at p. 4). Likewise, Plaintiff claims that Defendant directly and regularly distributed machines including the ER90-4 to Texas residents, as well as other United States residents (Dkt. #6 at p. 4).

## II.    Procedural Background

Plaintiff initiated this lawsuit on December 4, 2023, in Hopkins County, Texas (Dkt. #1 at p. 1; Dkt. #3). After the case was assigned to the 62nd Judicial District Court, on February 22, 2024, Defendant removed the matter to federal court asserting diversity jurisdiction under 28 U.S.C. § 1332(a)(2) (Dkt. #1 at p. 2). On March 27, 2024, Plaintiff filed his First Amended Complaint (Dkt. #6). On April 16, 2024, Defendant filed its Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(5) for Improper Service and 12(b)(2) for Lack of Personal Jurisdiction (Dkt. #7). After obtaining an extension of time to respond, Plaintiff filed his Response (Dkt. #11). Defendant filed its Reply after similarly obtaining an extension of time to do so (Dkt. #14).

Through its Motion, Defendant seeks dismissal of the action on two alternative grounds. As to the first, under Rule 12(b)(5), Defendant contends that Plaintiff's service through the Texas Secretary of State was insufficient under the Hague Convention (Dkt. #7 at p. 6). As to the second,

under Rule 12(b)(2), Defendant submits that the Court may not exercise jurisdiction over Defendant because there is no basis for an exercise of general jurisdiction over a Turkish company and Defendant has not purposefully availed itself such that specific jurisdiction brings Defendant within the Court's reach (Dkt. #7 at p. 6). Naturally, Plaintiff disagrees (Dkt. #11).

**LEGAL STANDARD**

Defendant's Motion presents two issues to be decided. The first is whether Plaintiff properly effected service upon Defendant under the Hague Convention. The second is whether the Court may exercise personal jurisdiction over Defendant, a foreign company. Because the Court determines that it may not exercise personal jurisdiction over Defendant, it need not address Defendant's service-related position. Accordingly, the Court begins with the standard governing the jurisdictional issue.

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. FED. R. CIV. P. 12(b)(2). After a non-resident defendant files a motion to dismiss for lack of personal jurisdiction, it is the plaintiff's burden to establish that *in personam* jurisdiction exists. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)). To satisfy that burden, the party seeking to invoke the court's jurisdiction must "present sufficient facts as to make out only a *prima facie* case supporting jurisdiction," if a court rules on a motion without an evidentiary hearing. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).  When considering the motion to dismiss, "[a]llegations in [a] plaintiff's complaint are taken as true except to the extent that they are contradicted by [a] defendant's affidavits." *Int'l Truck & Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 557 (N.D. Tex. 2003) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 282–83 n.13 (5th Cir. 1982));

*accord Black v. Acme Mkts., Inc.*, 564 F.2d 681, 683 n.3 (5th Cir. 1977). Further, "[a]ny genuine, material conflicts between the facts established by the parties' affidavits and other evidence are resolved in favor of plaintiff for the purposes of determining whether a *prima facie* case exists." *Id.* (citing *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992)). However, if a court holds an evidentiary hearing, a plaintiff "must establish jurisdiction by a preponderance of the admissible evidence." *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576, 585 (5th Cir. 2014) (citing *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241–42 (5th Cir. 2008)).

A court conducts a two-step inquiry when a defendant challenges personal jurisdiction. *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993). First, absent a controlling federal statute regarding service of process, the court must determine whether the forum state's long-arm statute confers personal jurisdiction over the defendant. *Id.* Second, the court establishes whether the exercise of jurisdiction is consistent with due process under the United States Constitution. *Id.*

The Texas long-arm statute confers jurisdiction up to the limits of due process under the Constitution. *Command-Aire Corp. v. Ont. Mech. Sales and Serv. Inc.*, 963 F.2d 90, 93 (5th Cir. 1992) (citing *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370 (5th Cir. 1987)). Therefore, the sole inquiry that remains is whether personal jurisdiction offends or comports with federal constitutional guarantees. *Bullion*, 895 F.2d at 216. The Due Process Clause permits the exercise of personal jurisdiction over a non-resident defendant when the defendant has established minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Minimum contacts with a forum state can be satisfied

by contacts that give rise to either general jurisdiction or specific jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

General jurisdiction exists only when the defendant's contacts with the forum state are so "'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *see Cent. Freight Lines v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003) (citing *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). Substantial, continuous, and systematic contact with a forum is a difficult standard to meet and requires extensive contacts between a defendant and the forum. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). "General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999) (citation omitted). However, "vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Johnston*, 523 F.3d at 610 (citing *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 596 (5th Cir. 1999)).

Specific jurisdiction is proper when the plaintiff alleges a cause of action that grows out of or relates to a contact between the defendant and the forum state. *Helicopteros*, 466 U.S. at 414 n.8. The Court conducts a three-step inquiry to determine whether specific personal jurisdiction exists. *Jones v. Artists Rights Enf't Corp.*, 789 Fed. Appx. 423, 425 (5th Cir. 2019). First, the Court asks, "whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there." *Id.* (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271

(5th Cir. 2006)). Second, the Court assesses "whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts." *Id.* (quoting *Seiferth*, 472 F.3d at 271). Third and finally, the Court considers "whether the exercise of personal jurisdiction is fair and reasonable." *Id.* (quoting *Seiferth*, 472 F.3d at 271).

In sum, a defendant who "'reach[es] out beyond one state and create[s] continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other state for the consequences of their actions." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647 (1950)). Establishing a defendant's minimum contacts with the forum requires contacts that are more than "random, fortuitous, or attenuated, or of the unilateral activity of another party or third person." *Id.*

"If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth*, 472 F.3d at 271. In this inquiry, the Court examines five factors: (1) the burden on the nonresident defendant; (2) the forum state's interests; (3) the plaintiff's interest in securing relief; (4) the interest of the interstate judicial system in the efficient administration of justice; and (5) the shared interest of the several states in furthering fundamental social policies. *Burger King*, 471 U.S. at 477. "It is rare to say the assertion of jurisdiction is unfair after minimum contacts have been shown." *McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009) (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)).

## ANALYSIS

The Court begins with the question of whether Defendant is subject to personal jurisdiction. It is not. Plaintiff claims that Defendant is subject to jurisdiction because:

(1) Defendant sells thermoforming machines to a Texas business (D6); (2) one of Defendant's machines injured Plaintiff in Texas; and (3) Defendant maintains an interactive website through which it sells its machines (*See* Dkt. #11 at pp. 8–15). Defendant disagrees. According to Defendant, none of these bases are sufficient to confer personal jurisdiction. The Court agrees with Defendant.

Once more, the Court conducts a two-step inquiry when a defendant challenges personal jurisdiction. *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993). First, absent a controlling federal statute regarding service of process, the Court must determine whether the forum state's long-arm statute confers personal jurisdiction over the defendant. *Id.* Second, the Court asks whether exercising jurisdiction would be consistent with due process under the Constitution. *Id.* Here, the forum state is Texas, so the Court turns to Texas's Long-Arm Statute. *Id.* The Texas Long Arm-Statute confers jurisdiction to the limits of due process under the United States Constitution. *Command-Aire Corp.*, 963 F.2d at 93. Thus, since the case lies under Texas's Long-Arm Statute, the Court's analysis collapses into a single due process inquiry. *See Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993).

Here, Plaintiff does not assert that Defendant is subject to general jurisdiction (*See* Dkt. #11 at p. 10). So, the Court's power over Defendant turns on whether it has specific personal jurisdiction. As explained below, the Court may not exercise specific personal jurisdiction over Defendant because it has not purposefully availed itself to Texas. For that reason, the Court must dismiss the action. The Court begins with the minimum contacts inquiry.

## I.    Minimum Contacts

The specific personal jurisdiction inquiry turns on whether the defendant has sufficient minimum contacts with the forum such that he may fairly expect to litigate there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). A defendant establishes minimum contacts

with a state if "the defendant's conduct and connection with the forum state are such that it should reasonably anticipate being haled into court there." *Burger King*, 471 U.S. at 474 (quoting *World-Wide Volkswagen*, 444 U.S. at 297). There must be some act whereby the defendant "purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.* at 475. The "essential point" of the minimum contacts inquiry is to ensure that nonresidents are not haled to court for "random, fortuitous, or attenuated contacts with the forum." *Id.* Thus, "[s]pecific jurisdiction 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432–33 (5th Cir. 2014) (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)).

Defendant contends that it lacks sufficient minimum contacts with Texas for the Court to exercise jurisdiction. According to Defendant, the Court's exercise of jurisdiction over Defendant would be improper because it "has no physical presence in Texas and conducts no marketing in Texas" (Dkt. #7 at p. 21). "Instead, it has sold certain machinery to only one entity, D6 [(Plaintiff's employer)], which it first met and communicated with outside of Texas" (Dkt. #7 at p. 21). In other words, Defendant claims that its limited contacts with Texas are too "random, fortuitous, or attenuated" to give rise to jurisdiction here. *See Burger King*, 471 U.S. at 475.

Plaintiff disagrees. To Plaintiff, the Court may exercise specific personal jurisdiction over Defendant for two reasons: (1) Defendant sold a defective machine to D6, a Texas Company; and (2) Defendant maintains an interactive website (Dkt. #11 at pp. 8, 11). Plaintiff's first argument asserts a stream-of-commerce theory of personal jurisdiction. Specifically, according to Plaintiff, Defendant began doing business with D6—a Texas company—in 2019 (Dkt. #11 at p. 8). As a part of that relationship, Plaintiff alleges that "Defendant began to sell and supply D6 with its

thermoforming machine and trim press thermoforming machinery" (Dkt. #11 at p. 8). Plaintiff claims that as a result, "Defendant contracted with a Texas citizen to supply goods and services in Texas and for approximately the last six years has been conducting business in Texas" (Dkt. #11 at p. 9) (cleaned up).² To Plaintiff, Defendant's Texas transactions involving defective machinery give rise to specific personal jurisdiction (Dkt. #11 at p. 9). Plaintiff's second basis for jurisdiction is entirely different, rooted only in the notion that "Defendant's interactive English-language website," which allegedly "markets to Texas residents in the hope that they purchase their products," independently establishes specific personal jurisdiction (Dkt. #11 at pp. 11, 13).

Defendant's Reply distills Plaintiff's argument against Defendant's Motion as follows: Defendant is subject to specific personal jurisdiction because: (1) Defendant's website is

---

² Though Plaintiff does not present a fulsome contracts-based argument in favor of personal jurisdiction, the Court addresses it anyway in the interest of a complete analysis. As the Supreme Court has observed, "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King*, 471 U.S. at 475 (quoting *Travelers Health Ass'n*, 339 U.S. at 647). At the same time, the Fifth Circuit has held that merely contracting with a resident of the forum state is not enough to give rise to specific personal jurisdiction. *See, e.g.*, *Stuart v. Spademan*, 772 F.2d 1185, 1194 (5th Cir. 1985); *Moncrief Oil Intern. Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007); *see also Dubea v. Simpson*, No. CIV. A. 907-CV-63-TH, 2009 WL 528258, at *4 (E.D. Tex. Mar. 2, 2009) ("[A] court cannot exercise specific personal jurisdiction over a nonresident defendant simply because the defendant entered into a contract with a plaintiff who resides in the forum.").

Instead, courts consider multiple factors in determining whether a particular transaction constitutes purposeful availment. *Dubea*, 2009 WL 528258, at *4; *Moncrief*, 481 F.3d at 312 (citing *Burger King*, 471 U.S. at 479). Those factors include: "whether the nonresident defendant solicited the contract in the forum state; where the contract was negotiated; where the contract was executed; the contract terms, including any forum-selection and choice of law clauses; whether the contract called for a long-term relationship between a forum resident and a nonresident defendant; and the place of performance." *Dubea*, 2009 WL 528258, at *4 (quoting *Command–Aire Corp. v. Ontario Mech. Sales and Serv., Inc.*, 963 F.2d 90, 93 (5th Cir. 1992)).

Here, application of these factors weighs against exercising jurisdiction over Defendant. Plaintiff does not plead whether Defendant solicited the contract in Texas but does not dispute Defendant's assertion that it only ever met its lone Texas customer (D6) in Germany (*See* Dkt. #11; Dkt. #7-1; Dkt. #11-2). Likewise, Plaintiff does not plead where the contract was executed (Dkt. #11). Plaintiff's argument is devoid of any discussion of contract terms, forum-selection or choice of law clauses, and does not allege whether any contract called for a particular scope or length of performance, let alone a place of that performance. In fact, Plaintiff has yet to point the Court to any contract at all. Thus, here, the Court cannot reach any conclusion other than that a contracts-based theory of specific personal jurisdiction cannot hold.

interactive; (2) Plaintiff was hurt in Texas; (3) Plaintiff was injured by a product that is alleged to have been dangerous; and (4) Defendant does business with D6 (Dkt. #14 at p. 9). Defendant maintains that none of these reasons are sufficient to give rise to jurisdiction. Defendant disputes Plaintiff's characterization of its website and maintains that any contact with Texas amounts to only isolated, random, or fortuitous contacts that do not constitute purposeful availment (Dkt. #14 at pp. 9–13). As set forth below, Defendant is correct.

### A.    Stream of Commerce

The Court begins with Plaintiff's stream-of-commerce theory. It has no merit. In products liability cases such as the one now before the Court, "an analysis involving a stream-of-commerce metaphor is often employed to assess whether the non-resident defendant has minimum contacts with the forum." *Zoch v. Magna Seating (Germany) GmbH*, 810 F. App'x 285, 289 (5th Cir. 2020). Indeed, "[i]n cases involving a product sold or manufactured by a foreign defendant, [the Fifth] Circuit has consistently followed a 'stream of commerce' approach to personal jurisdiction . . . . " *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013). Under that approach, "a defendant may purposefully avail itself of the protection of a state's laws—and thereby will subject itself to personal jurisdiction—'by sending its goods rather than its agents' into the forum." *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 778 (5th Cir. 2018) (quoting *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011)). In such circumstances, "the minimum contacts requirement is met so long as the court 'finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by concerns in the forum state.'" *Ainsworth*, 716 F.3d at 177 (quoting *Bearry*, 818 F.2d at 374).

In *McIntyre*, the Supreme Court addressed the stream-of-commerce doctrine. There (like here), the plaintiff injured his hand while using a machine that the defendant, McIntyre, had

manufactured in England. *J. McIntyre*, 564 U.S. at 878. McIntyre manufactured the machine in England, where it was incorporated and operated. *Id.* McIntyre then sold it to a U.S. distributor, who subsequently shipped the machine to New Jersey—a state to which McIntyre did not market, sell, or ship its machines. *Id.* at 886. The machine that the distributor sent to New Jersey was the first and only sale of such a machine in the state, and it formed the basis of the plaintiff's suit after it injured his hand. *Id.*

The Supreme Court held that a New Jersey court could not exercise personal jurisdiction over the defendant, but it did so without producing a majority opinion. Justice Kennedy authored a plurality opinion, which Chief Justice Roberts, Justice Scalia, and Justice Thomas joined. Under the approach espoused by that plurality, "[t]he defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." *Id.* at 883 (plurality). As the Fifth Circuit has recognized, its stream-of-commerce test—which does not require an intentional targeting of the forum state—"is in tension with" Justice Kennedy's plurality opinion. *Ainsworth*, 716 F.3d at 178. But that does not resolve the question.

Justice Breyer authored a separate concurring opinion, which Justice Alito joined. His concurrence declined the plurality's invitation to articulate a broader rule. Instead, Justice Breyer concluded that existing precedent, along with its application to the particular facts of the case— "which involved only a single sale in New Jersey"—were sufficient to decide the question *McIntyre* presented. *Ainsworth*, 716 F.3d at 178. According to Justice Breyer, "under *any* of the Court's precedents 'a single isolated sale' is not an adequate basis for personal jurisdiction." *Id.* (quoting *McIntyre*, 564 U.S. at 888). Faced with the fractured decision, application of the *Marks* rule is

necessary. Under that rule, "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" *Id.* (quoting *Marks v. United States*, 430 U.S. 188, 193 (1977)). But the Court breaks no new ground in applying *Marks* here; in *Ainsworth*, the Fifth Circuit held that Justice Breyer's concurring opinion "furnished the narrowest grounds for the decision" and therefore controls here. *Id.*

Not long after the Supreme Court decided *McIntyre*, the Fifth Circuit addressed how *McIntyre* affected this Circuit's stream-of-commerce test in *Ainsworth*. 716 F.3d at 178. There, not only did the Fifth Circuit hold that Justice Breyer's opinion controls under *Marks*, but it at least partially reconciled the Fifth Circuit's stream-of-commerce test with *McIntyre*. *Id.* at 178–79. The Fifth Circuit held that an application of the Fifth Circuit's stream-of-commerce test to the facts of that case did not "run afoul of *McIntyre*'s narrow holding." *Id.* at 178. Accordingly, the Court affirmed the exercise of specific personal jurisdiction over a defendant that had *extensive* contacts with the forum state. *Id.* at 179. There, the plaintiff, individually and on behalf of her deceased husband, sued Cargotec USA, Inc. ("Cargotec") and Moffett Engineering, Ltd. ("Moffett") in Mississippi. *Id.* at 176. The plaintiff's husband was killed after being run over by an allegedly defective forklift that Moffett manufactured and Cargotec sold to his employer. *Id.* The accident occurred in Mississippi. *Id.* Moffett was an Irish corporation with its principal place of business in Ireland. *Id.* It had an exclusive sales agreement with Cargotec. *Id.* A "far cry" from the single-sale situation in *McIntyre*, Moffett had sold 13,073 forklifts to Cargotec, 293 of which were distributed to Mississippi customers. *Id.* at 179. These sales were far from "isolated" occurrences. *Id.* No less, Moffett claimed to have no knowledge of Cargotec's Mississippi sales. *Id.* But that argument was

of no moment. As the Fifth Circuit reasoned, Moffett "reasonably could have expected that such sales would be made, given the fact that Mississippi is the fourth largest poultry-producing state in the United States" and Moffett's forklifts were for poultry related purposes. *Id.* Thus, the Fifth Circuit concluded that exercising personal jurisdiction was proper. *Id.*

With this in mind, two principles govern. First, the "minimum contacts [requirement is] satisfied so long as the court determines 'that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state." *Zoch*, 810 F. App'x at 290 (quoting *Ainsworth*, 716 F.3d at 177). Simply put, "'mere foreseeability or awareness is a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce.'" *Id.* (quoting *Luv N' care, Ltd. V. Insta-Mix, Inc.*, 438 F.3d 415, 419 (5th Cir. 1993)). Second, and at the same time, Defendant's contacts still "must be more than 'random, fortuitous, or attenuated, or the result of the unilateral activity of another party or third person.'" *Id.* (quoting *ITL Int'l Inc. v. Constenla, S.A.*, 669 F.3d 493, 498 (5th Cir. 2012)). Accordingly, "'a single isolated sale' is not an adequate basis for personal jurisdiction." *Ainsworth*, 716 F.3d at 178 (quoting *McIntyre*, 564 U.S. at 888 (Breyer, J. concurring)); *see also Hebert v. Wing Sale, Inc.*, 337 F. Supp. 3d 714, 722 (E.D. La. 2018) (dismissing for lack of personal jurisdiction under stream-of-commerce theory under similar circumstances for want of minimum contacts).

Here, the case is not a close call. In fact, it is a "far cry" from *Ainsworth*, and much closer to the "'single isolated sale'" that no precedent suggests constitutes a sufficient basis for an exercise of specific personal jurisdiction. *See Ainsworth*, 716 F.3d at 178 (quoting *McIntyre*, 564 U.S. at 888 (Breyer, J. concurring)). The Court does not have personal jurisdiction over Defendant

14

because Defendant did not purposefully avail itself to the state of Texas. The Declaration of Kenan Yavuz, the owner of Erkur Makine (the "Declaration"), says as much (*See* Dkt. #7-1). The Declaration is uncontroverted. In fact, Plaintiff offers it *in support* of his Response (*See* Dkt. #11-2). But it does nothing of the sort. It undermines Plaintiff's entire stream-of-commerce theory of personal jurisdiction. Defendant has no offices or property in Texas, let alone the United States (Dkt. #7-1 at pp. 1–2). Likewise, it has no employees, officers, directors, or agents in Texas or the United States (Dkt. #7-1 at p. 2). Nor does it advertise its products in Texas (Dkt. #7-1 at p. 2). Its only client in Texas, D6, alone is responsible for arranging the shipment of any machinery it buys from Defendant, and it constitutes "only one to two percent" of Defendant's business, globally (Dkt. #7-1 at p. 2). Defendant first met D6 representatives in Germany in 2019 and "began a business relationship with D6 to supply them with certain machinery that [Defendant] manufactures, such as multi-station thermoforming machinery, and time press thermoforming machinery" (Dkt. #7-1 at p. 2). That is not enough. *See Ainsworth*, 716 F.3d at 178; *Hebert*, 337 F. Supp. 3d at 722. Though Plaintiff did not plead an exact number of commercial contacts supporting jurisdiction—and the caselaw provides no brightline threshold number—it does not appear that Plaintiff has pleaded *prima facie* jurisdictional facts as he must. Certainly, this case stands in stark contrast to *Ainsworth*. Defendants contacts are simply too sparse to support jurisdiction.

Plaintiff's arguments do not change this fact-driven conclusion. Plaintiff pleaded that Defendant has been "conducting business in Texas" for "the last six years," but shows nothing in support other than Defendant's isolated interactions with D6 (*See* Dkt. #11 at p. 9). As the Court has already explained, those interactions are not enough. Plaintiff also relies on Defendant's Letter Response to the Texas Secretary of State for the notion that "Defendant admits that it 'handles the

sales and deliver of machines to customers in the United States,' including Texas citizens" (Dkt. #11 at p. 9) (quoting Dkt. #11-1 at p. 3). That argument cannot give rise to purposeful availment for two reasons. First, the forum with which the Court assesses Defendant's contacts is Texas, not the entire United States. *See Int'l Shoe*, 326 U.S. at 316. Second, Defendant's uncontroverted affidavit says that "D6 is responsible for arranging the shipment of [thermoforming] machinery" (Dkt. #7-1 at p. 2). The remainder of Plaintiff's argument in favor of its stream-of-commerce jurisdictional theory focuses on the alleged dangerousness of Defendant's machine—not Defendant's contacts with the forum. Thus, they are of no consequence in the Court's jurisdictional inquiry.

In summary, Defendant has not purposefully availed itself of Texas through its isolated, sporadic, and seemingly single-sale contacts with D6. Thus, Defendant lacks minimum contacts with the forum state. Under Supreme Court and Fifth Circuit precedent, the Court is not satisfied that Plaintiff has met his burden to show personal jurisdiction exists. For that reason, the Court rejects Plaintiff's stream-of-commerce arguments as a basis to exercise specific personal jurisdiction. With that, the Court must assess Plaintiff's alternative jurisdictional theory.

## B.    Defendant's Website

The Court turns to Plaintiff's alternative argument that Defendant's maintenance of its website[3] gives rise to specific personal jurisdiction. That argument fares no better. Specifically, Plaintiff submits that Defendant's assertion that "it does not advertise or market its products in Texas" is false (Dkt. #11 at p. 11). In support, Plaintiff claims that Defendant hosts an "interactive English-language website, which not only markets its products, but allows Texas citizens to access

---

[3]  The parties do not dispute that Defendant's website is accessible at: https://thermoform.erkur.com/ (*See* Dkt. #7; Dkt. #11; Dkt. #14).

Defendant's products, review the brochure with machine specifications, obtain a quote for the purchase and shipment of the machines, contact the company, and actually order its products" (Dkt. #11 at p. 11). Plaintiff notes that "Defendant further promises ongoing 'annual maintenance contracts' to Texas residents on its machines that directly provide 'necessary spare parts and remote connections service' directly to Texas to remove any delays in shipping" (Dkt. #11 at p. 13). Thus, according to Plaintiff, Defendant's website is so interactive that it amounts to purposeful availment to Texas such that jurisdiction is proper (*See* Dkt. #11 at p. 15).

Defendant rejects Plaintiff's characterization of its website as interactive and attempts to rebuff his arguments on the merits. Contrary to Plaintiff's assertion, Defendant claims that its "website *does not* allow users to simply order its products" (Dkt. #14 at p. 10). "It contains no pricing information, payment options, shipment options, or delivery options" (Dkt. #14 at p. 10). Instead, Defendant contends that, though its website permits viewers to download a brochure and request a quote, it does so in a passive manner. The "'request a quote' link" only "opens an email" to Defendant's email address (Dkt. #14 at p. 10). Defendant also claims that the website, in no way, shape, or form, promises "annual maintenance contracts" to Texas residents (Dkt. #14 at p. 10). Thus, Defendant argues that its website does not target Texas customers (Dkt. #14 at p. 11). Once more, Defendant is correct.

The first case to articulate a standard by which to determine whether a website may subject its host to specific personal jurisdiction is *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997). The outgrowth of that case is the "*Zippo* sliding scale test," which the Fifth Circuit has adopted. *See Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 786 (5th Cir. 2021) ("To assess the existence or absence of purposeful availment based on activities on the Internet, this court has

adopted the framework set forth in *Zippo*.") (cleaned up). Under that framework, "a defendant has purposefully availed itself of the benefits and protections of the forum state if it 'enters into contracts with residents of the foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet.'" *Id.* (quoting *Zippo*, 952 F. Supp. at 1124). On the other hand, a defendant has not purposefully availed itself of a forum "simply by posting information on a passive website." *Id.* These two possibilities are at opposite ends of the spectrum. In the middle, between these bookends, "purposeful availment turns on 'the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.'" *Id.* (quoting *Zippo*, 952 F. Supp. at 1124). Though a unique framework, the *Zippo* sliding scale does not change the core of a personal jurisdiction inquiry. "The analysis applicable to a case involving jurisdiction based on the Internet should not be different at its most basic level from any other personal jurisdiction case." *Id.* (quoting *Pervasive Software, Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 226–27 (5th Cir. 2012)). Thus, the question remains, "[h]as the defendant targeted the forum state?" *Id.* Put differently, the Court asks whether the defendant taken "some act by which the defendant purposefully avails itself to the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (quoting *Pervasive Software, Inc.,* 688 F.3d at 222 (5th Cir. 2012)). Here, the answer to each question is no.

Whereas interactive websites are those that "'involve the knowing and repeated transmission of computer files over the internet,'" passive websites are those that do "nothing more than advertise on the internet." *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999) (quoting *Zippo*, 952 F. Supp. at 1124). To illustrate, a website that a company uses to advertise its products and services and provide users with a mail-in order form, as well as the company's e-mail

address and telephone number, but does not provide a platform for customers to order products is nothing more than passive. *Id.* at 336–37.  However, the Fifth Circuit has considered a website that receives purchases, affords customers the ability to create accounts, and accepts product reviews to be "more than passive." *Admar*, 18 F.4th at 787. But that same website, even with some interactive components, does not become fully interactive without "engag[ing] in business transactions with forum residents" or "enter[ing] contracts with them." *Id.* (quoting *Mink*, 190 F.3d at 337). Such a website is in the middle of the spectrum. *Id.* (quoting *Mink*, 190 F.3d at 336). After all, "'website interactivity is important only insofar as it reflects . . . purposeful targeting of residents of the forum state.'" *Id.* (quoting *Pervasive Software*, 688 F.3d at 228).

Defendant's website falls toward the passive end of the spectrum. And when a website is passive, "jurisdiction is unavailable, full stop." *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 318 (5th Cir. 2021). As was the case in *Mink*, Defendant's website offers customers little more than the ability to view its products and the opportunity to contact it via telephone, mail, or email (*Compare* Dkt. #7-1 and Dkt. #14-1, *with Mink*, 190 F.3d at 336–37). That is not enough. *See Mink*, 190 F.3d at 336–37. While the website allows users to view Defendant's products, it does not permit direct ordering. Plaintiff claims that the website's "live chat option" and support offerings to customers render it more than a purely passive website (*See* Dkt. #11 at pp. 12–15). Plaintiff cites no authority for the notion that maintenance of a live chat feature alone renders a website interactive *per se* (*See* Dkt. #11). Of course, a live chat is not entirely passive. But the Court does not believe that the existence of a live chat feature alone is enough. Courts that have found the minimum contacts element satisfied because of a website that included a live chat have done so where that website included something more to move the needle farther toward the interactive end

of the spectrum. *See, e.g.*, *Tempur-Pedic Int'l, Inc. v. Go Satellite Inc.*, 758 F. Supp. 2d 366, 376 (N.D. Tex. 2010) (exercising specific personal jurisdiction where website allowed residents to ask questions via live chat, order products, and communicate after shipment and payment). That something more is not present here.

But even if it was—and even if Defendant's website was more interactive such that it did fall toward the middle of *Zippo*'s sliding scale—it would still be insufficient to give rise to jurisdiction for one simple, critical reason: it does not target Texas. That is fatal. *See Admar*, 18 F.4th at 787. As the Fifth Circuit has expressly held, "a defendant does not have sufficient minimum contacts with a forum state just because its website is accessible there. The defendant must also target the forum state . . . ." *Id*. Global internet accessibility, without evidence of purposeful direction to the forum state, is insufficient. *See Pervasive Software*, 688 F.3d at 228; *Revell v. Lidov*, 317 F.3d 467, 475 (5th Cir. 2002). Plaintiff tries to argue that Defendant's website targets Texas by claiming it promises "'annual maintenance contracts' to Texas residents" (Dkt. #11 at p. 13). That argument holds no water. First, nothing on the website appears to substantiate Plaintiff's bald claim that such contracts are promised to Texans, which Defendant disputes (*See* Dkt. #11 at p. 13; Dkt. #14 at p. 10). But second and more importantly, even if such contracts were generally offered, Plaintiff has not alleged that such a contract is at issue here or targets Texas in some special way (*See* Dkt. #6; Dkt. #11). Because the website is not interactive, and because the website does not target Texas in any way, the Court cannot say that Plaintiff has carried his burden to plead a *prima facie* jurisdictional case.

For the avoidance of doubt, the Court turns briefly to the cases Plaintiff cites in support of his *Zippo* jurisdictional theory, all of which are distinguishable (*See* Dkt. #11 at pp. 13–14). Plaintiff

suggests that Defendant's website is akin to that before the court in *AdvanceMe, Inc. v. Rapidpay LLC* because Defendant's website "has a drop-down menu to help customers narrow their inquiries, and it also has extensive online forms for customers to fill out to purchase Defendant's products and services" (Dkt. #11 at pp. 13–14) (citing 450 F. Supp. 2d 669 (E.D. Tex. 2006)). True enough, in that patent infringement case (governed by Federal Circuit law), the court concluded that a defendant's capital financing, credit card processing, and e-commerce service had sufficient minimum contacts to be subject to personal jurisdiction under *Zippo*. *AdvanceMe, Inc.*, 450 F. Supp. 2d at 673-74. But Plaintiff's argument ignores that, there, the website "ha[d] a drop-down menu that allow[ed] the potential customer to identify its state and receive state-specific quotes." *Id.* at 673. Thus, the website directed its patent infringing services to Texas. *See id.* While Defendant's website has a dropdown menu, Plaintiff has not pleaded nor pointed the Court to any evidence suggesting that the Website targets Texans (*See* Dkt. #6; Dkt. #11). Plaintiff next attempts to analogize Defendant's website with that in *Seoul Semiconductor Co. v. Nichia Corp.* because, according to Plaintiff, Defendant's website "allows customers to order products online and contact Defendant for support issues" (Dkt. #11 at p. 15) (citing No. 2:07-CV-276, 2008 WL 4252444, at *1 (E.D. Tex. Sept. 10, 2008)). That case also concerned patent infringement. There, citing *AdvanceMe, Inc*, the court determined that the defendant was subject to personal jurisdiction. *Seoul Semiconductor Co.*, 2008 WL 4252444, at *1. But again, that website enabled purchase of the infringing product and did so in Texas. *Id.* Thus, *Seoul Semiconductor*, like *AdvanceMe* is inapposite.

Plaintiff's reliance on *Autobytel, Inc. v. Insweb Corp.* is not persuasive for similar reasons (Dkt. #11 at p. 14) (citing No. CIV.A. 2:07-CV-524, 2009 WL 901482 (E.D. Tex. Mar. 31, 2009)). In that case, the website was highly interactive, and there was no question that the website was

21

directed to Texas and that the defendant had "continuous and systematic contacts with Texas." *Autobytel, Inc.*, 2009 WL 901482, at *2. That website and the unique facts of that case are entirely distinct from those before the Court here. Likewise, Plaintiff's attempt to use *Variant, Inc. v. Flexsol Packaging Corp.*, offers no support to its argument (Dkt. #11 at pp. 14–15) (citing No. 6:08 CV 478, 2009 WL 3082581, at *1 (E.D. Tex. Sept. 21, 2009)). Another patent infringement case, *Variant* determined that a defendant was subject to personal jurisdiction under *Zippo* because its website allowed visitors to book hotel rooms and purchase other travel products. *Variant*, 2009 WL 3082581, at *2. Unlike this case, that website was interactive, and the defendant used the allegedly patent-infringing website in Texas to sell products to Texas residents. *Id.* Finally, according to Plaintiff, this case is analogous to *Versata Software, Inc. v. Internet Brands, Inc.*, where the defendant was subject to personal jurisdiction, because "Defendant's website allows customers to search for and price web domains in auctions operated by Defendant" (Dkt. #11 at p. 14–15) (citing No. 2:08-CV-313, 2009 WL 3161370, at *1 (E.D. Tex. Sept. 30, 2009)). Yet again, that argument falls flat because that website was unquestionably interactive and targeted to Texas. *Versata*, 2009 WL 3161370, at *1–2. That case provides no analogy because Defendant's website is neither.

At bottom, Plaintiff has not pleaded sufficient facts to give rise to a permissible exercise of personal jurisdiction because Defendant lacks minimum contacts with Texas, both under a stream-of-commerce theory and under *Zippo*'s sliding scale. For that reason, the Court need not analyze the remaining elements of personal jurisdiction, nor the issue of service of process. Accordingly, the case must be dismissed.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(5) for Improper Service and 12(b)(2) for Lack of Personal Jurisdiction (Dkt. #7) is **GRANTED in part**. Accordingly, Plaintiff's First Amended Complaint (Dkt. #6) is **DISMISSED without prejudice**. The Clerk is directed to close this civil action.

**IT IS SO ORDERED**.

**SIGNED this 11th day of June, 2025.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE